SCANNED

UNITED STATES DISTRICT COURT
District of Maine

2005 JUL 22 A 11: 32
BY MGU DEPUTY CLERK

LAURIE TARDIFF, individually, and on behalf of others similarly situated,

Plaintiffs,

v.

KNOX COUNTY, et al.,

Defendants.

Civil No. 02-251-P-C

**PLAINTIFFS' REPLY MEMORANDUM TO DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Summary Judgment Standards**

Summary Judgment is appropriate under F.R.Civ.P. 56(c) if the record shows "There is no genuine issue as to any material fact." *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). A material fact is any contested fact with the potential to alter the outcome if the dispute over it is resolved in favor of the non-moving party. *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001). The party moving for summary judgment has the burden of proving the absence of evidence supporting the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1996). The Court in assaying the evidence "must view the record in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences in its favor". *Santoni*, 369 F.3d at 598. Once a preliminary showing that no genuine issue of material fact exists, the non-moving party must "produce specific facts, in suitable evidentiary form, to establish

114

the presence of a trial worthy issue". Triangle Trading Company v. Rob Roy Industries, Inc., 200 F.3d 1, 2 (1st Cir. 1999)(emphasis supplied) "As to any essential factual element of its claim on which the non-movant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trial worthy issue warrants, summary judgment to the moving party. In re: Spiegel, 260 F.3d 27, 31 (1st Cir. 2001).

**ARGUMENT**

At least since 1994 the Knox County Jail has uniformly and indiscriminately subjected all detainees to strip search. *PSMF Paragraph 23, 34, 38, 70, 71, and 72 and Plaintiffs' Exhibit 20.*

Defendants attempt to underride this assertion not by producing specific evidence in suitable evidentiary form which contradicts it, but by vague assertions that don't.

A. Laurie Tardiff.

Having conceded Ms. Tardiff's claims typical of those of the class as the Court has defined it[1], Defendants now contend Ms. Tardiff was appropriately strip searched, not because she was charged with a Class C crime, but because she was charged with a "violent" Class C felony. *DSMF Paragraphs 2 and 3 and DSAMF Paragraphs 104 and 105, and Defendants' Memorandum at Page 6.* Nothing could be further from the truth. Under Maine Law, tampering with a witness can be a crime of violence, 17A M.R.S.A. §454(1)(B), but not always. *(Plaintiffs' Exhibit 17)* Specifically, Ms. Tardiff's charge of tampering was brought under 14 M.R.S.A. §454(1)(A)(2) – the non-violent section of

[1] Defendants' challenged the class certification at the District Court and Appellate Court levels under Rule 23(b) conceding Ms. Tardiff met the requirements of Rule 23(a).

§454. *(Id)* Violent tampering falls under 454(1)(B). *Plaintiffs' Exhibit 17 and Plaintiffs' Reply to Defendants Statement of Additional Material Facts (hereinafter PRDSAMF) Paragraphs 104 and 105.* Ms. Tardiff was charged under §454(1)(A)(2) within inducing or attempting to induce a witness to withhold testimony. *Affidavit of Middaugh, Defendants' Exhibit 63.* Ms. Tardiff was held in a temporary holding cell, Cell 142. Defendants' Exhibit 28 and Plaintiffs' Exhibit 2.

Similarly, Defendants want to change their search methodology to disallow visual inspection of Ms. Tardiff's anal and vaginal cavities. *(DSAMF Paragraph 105-A and Plaintiffs' Reply PRDASMF Paragraph 105-A)* apparently believing pretense to watching for objects hitting the floor reduces the level of embarrassment described in Swain v. Spinney, 117 F.3d 1, 6-7 (1st Cir. 1997), *quoting* Mary Beth G. v City of Chicago, 723 F.2d 1263, 1272 (7th Cir. 1983), to wit: "Demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission". *See also Plaintiffs' Exhibit 19 and Defendants' Exhibits 52, 53, 54 and 58.*

The issue is not whether strip search of some detainees may be justified, but that all searches were uniform. Everyone searched, was searched the same way. All searches were indiscriminate. The County was not differential in whom it searched. Its policy was blanket. It searched all detainees who were to be housed. The current suggestion by the Defendants is the obverse: We must presume all searches were justifiable and that all persons searched do not qualify under the class definition fixed by the Court. The Defendants attempt at justifying the Lynette Dean strip search *(DSAMF Paragraphs 109*

*and 110)* is another example of this slight of hand. Lynette Dean was brought to the jail at 10:43 p.m. on December 21, 2000. She was belligerent and as a result was put in the drunk tank. At 6:51 a.m. the next morning, after she had slept, she was returned to booking to complete the process where she was strip searched. The Defendants would like us to believe that the Jail strip searched her because she was hostile and assaultive. Had the Jail considered her a threat to security, it would not have waited 8 hours to strip search her. This is yet another example of the Jail's attempt to stretch beyond its reach to justify *post hoc* an unjustifiable search.

Defendants concede strip searches were conducted uniformly and in a blanket fashion. *(Affidavit of Donna Campbell; Plaintiffs' Exhibits 14, 15, 20 and 23; PSMF Paragraphs 63, 66 and 67; and, PRDSAMF Paragraphs 153, 154, 155, and 156).* Who is an eligible class member is a question for another day. Laurie Tardiff has established as a matter of law that the constitutional violation has occurred and that the records of the jail fail to justify the strip searches, that is, Laurie Tardiff and the eligible members of this class were subjected to a strip search and/or visual body cavity search without evaluation for individualized reasonable suspicion while being held at the Knox County Jail.

B. The County

The County hides behind its written policies, particularly C-120 and D-220, the DOC equivalent and the Attorney General's regulations asserting It, meaning the County, had the right rules in place and therefore can't be liable. They say because the Sheriff and

his deputies complied with the policy revisions mandated by the State, they are innocent of any violation(s) not brought to their specific attention.

Affidavits to this effect are offered by Sheriff Davey and a succession of jail administrators from Mr. Voyer through Mr. Robbins (1985-2004) who surprisingly say uniformly and in their collective voice: "We knew nothing". *DSAMF Paragraphs 153 – 156.* They were policy setters. The Jail Administrators drafted and revised at the behest of Sheriff Davey *(DSAMF Paragraph 114)* and Sheriff Davey, the final decider, approved. *(DSAMF Paragraphs 111 and 116)*. They trained and trained specifically and meticulously on the vicissitudes of strip search under policies C-120 and D-220. *(DSAMF Paragraphs 117-119 and 120)*. They reviewed, revised and retrained *(DSAMF Paragraphs 122 to 126 and 127)* but didn't know and didn't have any reason to know all detainees were being subjected to blanket strip search. *(DSAMF Paragraph 135)*. So after further review, revision, and retraining, they still didn't know or have reason to know all detainees were still subjected to blanket strip search. And then along came the October, 2000 DOC Biennial Report and right behind that the end of Carmen Miller's case. Carmen Miller was strip searched four (4) times over the weekend of April 13, 1996. Her case was filed in United States District Court on April 10, 1998 and settled on February 8, 2001. But the Sheriff and his deputies and Jail Administrators had no knowledge or reason to know the Fourth Amendment to the United States Constitution was being violated on a nearly daily basis in the Knox County Jail.

How can this be? It can't be. And it wasn't. Richard Robbins put this fantasy to rest initially on May 10, 2001 when he wrote to local police chiefs and told them "No more strip searches at the Jail on D and E offenders **for the purpose of discovering evidence**."[2] and finally on February 14, 2003 when Robbins learned from C/O Peggy Kenney; Sergeant Jay Costigan; and Records Officer Cheryl (as in affidavit of) Daniello that the real strip search policy at the jail wasn't the revised policy which Voyer drafted in 1995 subsequent to the 1994 DOC report, but the blanket strip search of all inmates regardless of the crime. This tried and true policy remains the official practice of the jail right through the present. *Plaintiffs' Exhibits 20 and 23.*

Richard Robbins "non-search" rules are occasionally followed, but they have not replaced the blanket search practices corrections officers understand, are comfortable with and which take little time and thought to execute. *See PSMF 63, 66 and 67 and Affidavit of Robert Pedreira, Plaintiffs' Exhibit 6.* Robert Pedreira was strip searched at the Knox County Jail in July of 2000 on a violation of probation charge and again at the Knox County Jail on August 21, 2003 after being arrested on a violation of probation. He describes the strip searches of those dates as identical and identical to the strip searches done at the Knox County Jail at least as far back as 1994.

When an ostrich sticks its head in the sand, it is deliberately indifferent to its surroundings. When the Sheriff and his deputies and jail administrators do so because

[2] Interestingly Robbins invited the Chiefs to commit their own illegal searches prior to bringing the offenders to the jail.

strip searching everyone is easiest, they are deliberately indifferent to the constitutional rights of inmates and liable to those inmates under Section 1983 of Title 42.

Did Sheriff Davey know that his corrections staff was strip searching everyone they detained? He is presumed to know. As the Defendants' so clearly state, he is the high Sheriff. The buck stops at his desk. *Davey Affidavit, Paragraph 2, DSAMF Paragraphs 111, 112 and 116.*

The record evidence does not support Sheriff Davey's assertions. The evidence is that Sheriff Davey pursued a blanket strip search policy in the jail and did so successfully until Carmen Miller's case was resolved in February, 2001. To that point, policy changes were made to appease the Department of Corrections, but business went on as usual in the Jail. *For example, see Plaintiffs' Exhibit 20.* Sheriff Davey did not train employees in the Department of Corrections imposed rules until *Miller* forced him to. *Plaintiffs' Exhibits 21, 22 and 23.* Richard Robbins random testing and mandatory training was short-lived. He tested twice: December 27, 2002 on three probationers and one corrections officer; and February 14, 2003 on one corrections officer. *Plaintiffs' Exhibit 22.* Training occurred one time spread over the three days of May 1, 2, and 3, 2001.

Blanket strip searches have been unconstitutional throughout Sheriff Davey's entire term of office. *Bell v. Wolfish* was decided in 1979 *(441 U.S. 520 1979).* *Mary Beth G. vs. City of Chicago*, was decided in the 7th Circuit in 1983. *(723 F.2d. 1263, 7th Cir., 1983).* And *Swan v. Spinney*, was decided in the 1st Circuit in 1997. *(117 F.3d 1, 1st Cir., 1997).*

The jukin' and jivin' and bobbin' and weavin' aside, Sheriff Davey's claims of good faith qualified immunity must be analyzed under the "plainly incompetent" or "those who knowingly violate the law" standards. Malley v. Briggs, 475 U.S. 335, 341 (1986). Richard Robbins memorandum of February 14, 2003 *(Plaintiffs' Exhibit 20)*, suggests the "knowing violation" standard applies to Sheriff Davey and his deputies. As Robbins, with near precision, points out:

> "5. Since the policy was written by Mr. Voyer in his capacity as jail administrator, and both Sergeant Costigan and R/O Daniello suggest that a **conscious decision was made to disregard the policy**, it is reasonable to believe that the ONLY person that could have issued such an advisory to disregard the policy that would have had a compulsory effect on staff would have been ~~Lt. Wyman~~ (sic) [Sheriff Davey]." *(Plaintiffs' Exhibit 20, emphasis supplied).*

As the Defendants so eloquently state: as the "Sheriff of Knox County, Davey has final decision making authority with respect to all policy and operational matters at the Knox County Jail." *DSAMF Paragraph 112 citing Davey Affidavit Paragraph 2;* and, "Davey is the only individual at the Knox County Jail with the ability to make final decisions regarding implementation of a jail policy or procedure." *DSAMF Paragraph 116 citing Davey Affidavit Paragraph 2.*

## CONCLUSION

Defendants have failed to meet their burden in demonstrating a genuine issue of material fact on the liability issues presented by the Plaintiffs case including qualified immunity.

Respectfully, Plaintiff asks the Court to enter judgment on her behalf and on behalf of the class she represents with respect to liability on all Counts of her Complaint.

Respectfully submitted,

Dated: July 21, 2005

Robert J. Stolt, Esq.
Lipman, Katz & McKee, P.A.
P.O. Box 1051
Augusta, Maine 04332
(207) 622-3711
Bar No.: 1406

## CERTIFICATE OF SERVICE

I, Robert J. Stolt, hereby certify that a conformed copy of the foregoing Plaintiffs' Reply Memorandum To Defendants' Response To Plaintiffs' Motion For Partial Summary Judgment has been mailed, this date, to the following counsel of record:

John J. Wall, III, Esq.
Monaghan Leahy, LLP
Post Office Box 7046
95 Exchange Street
Portland, Maine 04112-7046

Peter Marchesi, Esq.
Wheeler & Arey, P.A.
P.O. Box 376
Waterville, ME 04903-0376

Timothy Woodcock, Esq.
Eaton Peabody
Post Office Box 1210
Bangor, Maine 04402-1210

Dated: July 21, 2005

Robert J. Stolt, Esq.
Attorney for the Plaintiff