UNITED STATES DISTRICT COURT
District of Maine

| | | |
|---|---|---|
| LAURIE TARDIFF, on behalf of herself and on behalf of others similarly situated, | ) ) ) | |
| Plaintiffs | ) ) | |
| vs. | ) ) | Docket No. 02-251-P-C |
| KNOX COUNTY, et al., | ) ) | |
| Defendants | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## Introduction

NOW COMES the Plaintiff, by and through counsel to oppose Defendants' Motion asking the Court to reconsider its Order of November 2, 2005 granting Plaintiff partial summary judgment. Defendants state no jurisdictional predicate for their Motion nor point to any appropriate criteria on which it should be assayed. Instead Defendants launch an excursion into the shallow water of reargument.

## Reconsideration Standard

A Motion for Reconsideration which asks the Court to substantively modify or alter a judgment is usually governed by Rule 59(e) of the Federal Rules of Civil Procedure. However, Rule 59(e) applies to final judgments and the Motion must be brought within ten (10) days of the judgment to be reconsidered. A Rule 59(e) Motion

1

timely filed, tolls the appeals period. A Motion for the reconsideration which is brought later than ten (10) days after entry of a final judgment is construed under Rule 60(b). It does not toll the appeal period.

Interlocutory judgments, such as the Court's November 2, 2005 Order of Partial Summary Judgment "remain open to trial Court reconsideration" until the entry of judgment. *Geffon v. Micrion Corp.*, 249 F.3d 29, 38 (1st Cir. 2001) [quoting *Perez v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994)]. Because a Motion to Reconsider an Interlocutory Order does not fall within any specific Federal Rule, it is governed by "the inherent power of the rendering District Court to afford such relief from interlocutory judgments … as justice requires". *Greene v. Union Mutual Life Insurance Company of America*, 764 F.2d 19, 22 (1st Cir. 1985).

> "That said, …even in the prejudgment arena, the proffering of arguments or evidence that could have been, but were not, timely presented raises institutional concerns. Neither the Court nor opposing counsel should be obliged to expend needless time and resources dealing with arguments made on a piecemeal basis, and the court should not be placed in the position of issuing rulings that are subject to change based on further developed argumentation. Such concerns properly are weighed in the balance when assessing whether the interest of justice require reconsideration …." *Donna L. Wells v. State Manufactured Homes, Inc., et. al.*, U.S. District Court, District of Maine, Civil No. 04-169-P-DMC (January 12, 2006).

….

> [A] **motion** for **reconsideration** should not give the losing party the opportunity to simply reargue its losing points and authorities. Moreover, "revisiting the issues already addressed 'is not the purpose of a **motion** to reconsider', and 'advancing new arguments or supporting facts which were

otherwise available when the original **summary judgment motion** was briefed' is likewise inappropriate." <u>Van Skiver v. United States</u>, 953 F2d 1241, 1243 (10th Cir. 1991) (citation omitted); see also <u>Frietsch v. Revco, Inc.</u>, 56 F3d 825, 828 (7th Cir. 1995) ("It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him."). The broad "interest of justice" standard, which guides the Court's analysis, is highly discretionary. See <u>Green</u>, 764 F2d at 22; <u>United States v. Roberts</u>, 978 F2d 17, 22 (1st Cir. 1992) (noting that the interest of justice test "covers considerable ground"). In conducting this analysis, this Court may consider the following, non-exhaustive list of factors: (1) the nature of the case, (2) the degree of tardiness, (3) the reasons underlying the tardiness, (4) the character of the odmission, (5) the existence *vel non* of cognizable prejudice to the non-movant in consequence of the omission, (6) the effect of granting (or denying) the motion on the administration of justice, and (7) whether the belated filing would, in any event, be more than an empty exercise. <u>Coffin v. Bowater, Incorporated</u>, 2005 WL 3021979 (D. Maine) pp 1-2. (emphasis original)

Nevertheless, Courts have a judicial interest in seeing cases reach conclusion. And the inherent power of the court to revisit previously decided judgments is an extraordinary remedy laying squarely within the sound discretion of the District Court. The District Court is not engaged in a purely academic exercise, nor is it fruitful to the interest of justice to determine, reargue, and redetermine how many angels can dance on the head of a pin. <u>Torre v. Continental Insurance Co</u>., 15 F3d 12, 14 (1st Cir. 1994).

The seven factors in <u>Roberts</u> used to illuminate the interest of justice on a properly presented motion for reconsideration is not an exhaustive list, yet it is one that has been frequently used by the courts of the First Circuit to evaluate the merits of a motion for reconsideration. Mindful that "(w)hen determining whether to grant reconsideration of an interlocutory order, the court must determine

3

whether the interest of justice require the requested action." *Green v. Union Mutual Life Insurance Co.,* 764 F.2d 19, 22 (1st Cir. 1985).

## **The Seven Factors**

(1)   The nature of the case

This is a class action brought under 42 United States Code §1983 by individuals processed at the Knox County Jail claiming violation of the Fourth Amendment as a result of being strip searched without reasonable suspicion. The Court granted Plaintiffs Motion for Class Certification under Federal Rule of Civil Procedure 23(b)(3). Certification was appealed and affirmed. *Tardiff v. Knox County*, 365 F.3d 1 (1st Cir. 2004). This case has been in litigation since November, 2002. Partial Summary Judgment was granted to the Plaintiff on November 2, 2005. A trial, originally scheduled to begin April 1, 2006, has been postponed to May 1, 2006 to enable the Court to consider Defendants pending motion. The length of time from the date of filing to the present, Plaintiff believes, weighs against Defendants motion for reconsideration. That this is a class action in which Notice to potential class members has been approved and disbursed likewise weighs against reconsideration.

(2)   The degree of tardiness

The issues raised in Defendant's Motion for Reconsideration: summary judgment standard, Fourth Amendment law, Section 1983 standards for County (Municipal) liability for custom, practice or policy, *Bell v. Wolfish*, the pervasiveness of and other issues relating to the strip search process and the searched, themselves, as well

as the deliberate indifference of the Sheriff were all presented in Defendants summary judgment papers. Defendants Motion for Reconsideration is an effort to re-bite the apple, to rehash and regurgitate issues already decided. The First Circuit has characterized such exercises as wasteful delay and overall wheel spinning. See <u>United States v. Connell</u>, 6 F.3d 27, 30 (1st Cir. 1993). The Defendants give no explanation for the tardy filing of this Motion, 99 days after entry of the Court's Summary Judgment Order, and 30 days before the anticipated trial date of April 1, 2006. Plaintiff suggests that the degree of tardiness exhibited by Defendants, consequently, weighs against reconsideration.

(3) The reasons underlying the tardiness.

Defendants have not explained why they waited to the eve of trial to file their Motion for Reconsideration. Given the nature of the Motion, its timing and substantial tardiness, there is no valid explanation for the late filing. This weighs against reconsideration.

(4) The character of the omission.

The omission is the failure of the Defendants to make all of the arguments they would like to have made in opposition Memorandum opposing Summary Judgment. "A Motion for Reconsideration is not the place for the losing party to reargue its losing points and authorities or revisit issues already addressed or advance new arguments or supporting facts which were otherwise available when the original summary judgment

5

motion was briefed." *Coffin v. Bowater*, supra at p. 1. This factor also weighs against Defendants' Motion for Reconsideration.

(5) The existence *vel non* of cognizable prejudice to the non-movant in consequence of the omission.

Defendants' delay in and of itself, is prejudicial to the Plaintiff because the Plaintiff has gone to the effort and expense of obtaining the Court's approval of the class notice and, under the Court's approval Order, Plaintiff noticed the class through various media. The Plaintiff is also prejudiced by having to rehash issues already addressed in voluminous summary judgment papers and which have been predominant themes of the Defendants since the beginning of this litigation. This factor, likewise, weighs against Defendants' Motion for Reconsideration.

(6) The effect of granting (or denying) the Motion on the administration of justice.

This factor is also frequently entitled "Institutional Interests". "The Court, too, has a significant interest in the punctilious observation and strict enforcement of its procedural rules, including temporal requirements." See *In Re: Sonoma V.,* 703 F.2d 429, 432 (9th Cir. 1983) (Noting that strict enforcement of time constraints may prove necessary to allow a Court "responsible for the condition of its docket and for the speed with which it administers justice" to ensure "a proper flow of judicial business")(Citation omitted). *United States of America v. Roberts*, 978 F.2d 17, 23 (1st Cir. 1992).

Defendants' delay and attempt to regurgitate the summary judgment issues negatively impacts the Court. The Defendants' failure on summary judgment to fully expound the factual and legal arguments it could have raised should not be cause for reconsideration. As mentioned earlier, "Courts should not spend their energies wrestling with academic questions or deciding the judicial equivalent of how many angels can dance on the head of a pin." *Torre v. The Continental Insurance Company,* 15 F.3d 12,14 (1st Cir. 1994). If the parties are able to decide for themselves when they will file their legal arguments or expansion of them, the litigation process will be an endless road of twist and turns, ending in chaos.

"The Court has a significant interest in the conscientious enforcement of the rules regarding summary judgment practice. Permitting a second round of summary judgment motions without any convincing reason… would frustrate this Court's efforts to establish and maintain continuity in the motion practice and treatment of litigants in this district." *Coffin v. Bowater, Inc.,* 2005 WL 3021979 at 4. The institutional interests of the Court, in other words, further weighs against Defendants' Motion for Reconsideration.

(7) Whether the belated filing would, in any event, be more than an empty exercise.

Defendants' Motion for Reconsideration is in fact an empty exercise because it seeks to rehash and re-challenge through added debate the original summary judgment motion. Courts have long held that that is not a proper basis for reconsideration.

7

"Litigation is not a game of hopscotch. It is generally accepted that a party may not, on a Motion for Reconsideration, advance a new argument that could (and should) have been presented prior to the District Court's original ruling." *E.G., DiMarco-Zappa v. Cabanillas*, 238 F.3d 25, 33 (1st Cir. 2001); *Aybar v. Crispin-Reyes*, 118 F.3d 10, 16 (1st Cir. 1997). "This principle has deep prudential roots. Litigants normally must frame the issues in a case before the trial court rules. After that point, a litigant should not be allowed to switch from theory to theory like a bee in search of honey." *Cochran v. Quest Software, Inc.,* 328 F.3d 1, 11 (1st Cir. 2003).

The Defendants do not point the Court to obvious error or grave injustice. Instead, the Defendants wrangle with the facts and law, adding a few additional, but no new, citations in hopes of persuading the Court to reverse itself without any showing of merit. "From all that appears, nothing prevented the defendants from offering the new arguments… during the original round of briefing – a fact that cuts against reconsideration." *Wells v. State Manufactured Homes, Inc*., U.S. District Court 04-169-P-DMC (Me. 1-12-06). This factor, again and profoundly, weighs against the Defendants' Motion for Reconsideration.

## **DEFENDANTS REARGUMENT**

The Court has been through this sort of exercise before. Since this litigation began, the Defendants have attempted to split hairs and spin words. Defendants' memorandum incorporated into its Motion for Reconsideration launches yet another round of splitting and spinning.

8

The Defendants say reconsideration is necessary because the Court (1) did not afford Defendants the benefit of the summary judgment standard; (2) reached conclusions and made findings not supported by the summary judgment record; (3) reached legal conclusions contrary to First Circuit law; and (4) misinterpreted and misapplied *Bell v. Wolfish*.

## **Summary Judgment Standard**

Defendants do not cite to summary judgment standards which differ from those applied by the Court or recited by Defendants themselves in their first summary judgment opposition memorandum.

What they do is reargue the record facts to give those facts new meaning and context by spinning new meanings, filling in gaps and making new connections. Defendants attempt to turn their losing arguments around. In short, the Court simply failed to inference the Defendants to victory and now they ask the Court to reconsider that failure.

There is no "injustice" to be corrected or "interest of justice" to be served. This is a belated "end-around", a repackaging, an effort to undue a knot. Following *Cochran v. Quest Software, Inc.*, 328 F.3d 1, (1st Cir. 2003) this Court has rejected the Defendants approach

> "…the proffering of arguments or evidence that could have been but were not, timely presented raises institutional concerns. Neither the Court nor opposing counsel should be obligated to expend needless time and resources dealing with arguments made on a piece meal basis, and the Court should not be placed in the position of issuing rulings that are subject to change based on <u>further developed</u>

argumentation. *(emphasis supplied)* See <u>Wells v. State Manufactured Housing</u>, (slip decision, Civil No. 04-169-P-DMC, January 12, 2006, Cohen, MJ at p. 2) citing <u>Cochran</u>, p. 10-11, *supra* at p. 2 and <u>United States v. Roberts</u>, 978 F.2d 17, 21-22 (1st Cir. 1992).

Circuit Judge Selya writing for the First Circuit Court of Appeals in <u>Cochran</u> aptly writes:

> "Litigation is not a game of hopscotch. It is generally accepted that a party may not, on a Motion for Reconsideration advance a new argument that could (and should) have been presented prior to the District Court's original ruling. (citation omitted). This principle has deep prudential roots. Litigants normally must frame the issues in a case before the trial court rules. <u>After that point</u>, a litigant should not be allowed to switch from theory to theory like a bee in search of honey. <u>Cochran</u>, *supra* at p. 10.

## **Conclusions Reached And Findings Made Not Supported By The Summary Judgment Record**

Like a bee in search of honey, Defendants take measure on numerous documents embodied in the summary judgment record sampling the nectar of each record directly. In pages 5-25 of Defendants' 33-page Memorandum, they renew once again their "snap shots in time" defense re-arguing each search, each day, each moment in time, each individual circumstance must be inspected in detail before any conclusion can be reached. Defendants re-present their argument that no generalizations can be made regarding Knox County Jail strip search policies, customs or practices from snap shots. And, they re-argue that the only evidence sufficient to support conclusions about the Jail's strip search practices is evidence which totals the circumstances of each individual

strip search occurring between November 19, 1996 and December 31, 2004. Failing this mountain of evidence, they conclude that the Court must infer from the "snap shots" and other "discreet evidence" that no wide spread practice existed. All of this rhetoric is, of course, conclusory. No evidence is offered by Defendants to demonstrate the inaccuracy or untrustworthiness of State jail inspection reports or the jail's own documents that all arrestees were strip-searched. Defendants assail the evidence as evidencing only "discreet moments in time" which, like a cloudy day, demand the inference that the sun did not rise.

**Legal Conclusions Contrary To First Circuit Law/*Bell v. Wolfish*: Misinterpreted And Misapplied**

Once done with repostulating the facts, Defendants revive *Bell v. Wolfish*, and the Court's failure to know First Circuit law when it comes to deciding who can be strip searched. This compulsive argument, their cloak of many colors, has worn thread bare through this litigation. The Defendants complaint is, again, that the Court's decision fails to inference them to victory.

The First Circuit took care of both the snap shot theory and the *Bell* argument quite nicely in its *Tardiff* decision. *Tardiff v. Knox County*, 365 F.3d 1, 2 (1st Cir. 2004), when it noted, in two different places in its decision:

> Over the last few decades a changed popular sensibility has produced a series of decisions curtailing what was once an apparent routine practice in many jails of strip-searching arrestees not yet convicted of any crime. [FN1]

11

> FN1The trend began with the Supreme Court's decision in *Bell v. Wolfish*, 441 US 520 (1979). In this Circuit the leading cases are *Wood v. Hancock County Sheriff's Department*, 354 F.3d 57 (1st Cir. 2003); *Miller v. Kennebec County*, 219 F.3d 8 (1st Cir. 2000); *Swain v. Spinney*, 117 F.3d 1 (1st Cir. 1997); *Tardiff*, supra at p. 2.

....

The second issue, whether the strip search policy is unlawful, presents different complications. The first is that it might be unlawful as to some groups of arrestees (say, those arrested on firearm felony charges) and not others, (say, those seized for non-payment of parking tickets). Both District Courts sought to narrow the potential multiplicity of categories - - -- which could in several respects work against class status -- -- by narrowing the class. In both Orders, the class definition excluded those arrested for drugs, weapons or violent felonies -- -- categories for which automatic strip searches might seem easier to defend. *Nilsen*, 219 FRD at 25, *Tardiff*, 218 FRD at 336.

Of course, Defendants might still persuade the Court that some within the remaining group of arrestees (e.g. those arrested for misdemeanors of certain types) could also be strip searched as a matter of course. <u>But the core notion that some classes of arrestees should not be strip searched without particularized suspicion is now embedded in the case law</u>. FN6

> FN6See *Miller*, 219 F.3d at 12; *Swain*, 117 F.3d at 12. If anything, some of the rhetoric might lead the reader to believe, quite wrongly, that every arrestee must be independently evaluated based on his or her own circumstances. In reality, **generalizations** lie behind most so-called individual decisions and to endorse the generalization is, in substance, to endorse categorical rules. See *Roberts v. Rhode Island*, 239 F.3d 107, 112 (1st Cir. 2001). (emphasis added)

## **CONCLUSION**

For all the foregoing argument, Plaintiffs object to Defendants Motion for Reconsideration and respectfully request that such motion be denied.

Dated: March 2, 2006                    __s/Sumner H. Lipman_____
                                        Sumner H. Lipman, Esq.
                                        Attorney for Plaintiffs
                                        Lipman, Katz & McKee, P.A.
                                        P.O. Box 1051
                                        Augusta, Maine  04332
                                        (207) 622-3711
                                        Bar No.:  300

Dated: March 2, 2006                    __s/Robert J. Stolt_____
                                        Robert J. Stolt, Esq.
                                        Attorney for Plaintiffs
                                        Lipman, Katz & McKee, P.A.
                                        P.O. Box 1051
                                        Augusta, Maine  04332
                                        (207) 622-3711
                                        Bar No.:  1406

Dated: March 2, 2006                    ___s/Dale Thistle_____
                                        Dale Thistle, Esq.
                                        Attorney for Plaintiffs
                                        P.O. Box 160
                                        Newport, ME  04953
                                        (207) 368-7755
                                        Bar No.:  7483

UNITED STATES DISTRICT COURT
District of Maine

| | |
|---|---|
| LAURIE TARDIFF, | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| vs. | )   Docket No. 02-251-P-C |
| | ) |
| KNOX COUNTY, et al. | ) |
| | ) |
|       Defendants | ) |

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 2, 2006 I filed Plaintiffs' Memorandum In Opposition To Defendants' Motion For Reconsideration Of Order Granting In Part And Denying In Part Plaintiffs' Motion For Partial Summary Judgment, with the Clerk of Court using the CM/ECF system, which will send notification of such filing(s) to the following:

| | |
|---|---|
| Peter T. Marchesi, Esquire | Dale Thistle, Esq. |
| Wheeler & Arey, P.A. | P.O. Box 160 |
| 27 Temple St., P.O. Box 376 | Newport, Maine 04953-0160 |
| Waterville, ME 04903-0376 | |
| | |
| John J. Wall, III, Esquire | Timothy Woodcock |
| Monaghan Leahy, LLP | Eaton Peabody |
| 95 Exchange Street, P.O. Box 7046 | P.O. Box 1210 |
| Portland, ME 04112-7046 | Bangor, ME 04402-1210 |

Dated: March 2, 2006

_____
Robert J. Stolt
Attorney for Plaintiff

Lipman, Katz & McKee, P.A.
227 Water Street, 2nd Fl.
Post Office Box 1051

Augusta, Maine  04332-1051
Telephone:  (207) 622-3711