UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| |  |
|---|---|
| LAURIE TARDIFF, individually and on behalf of others similarly situated,<br><br>            Plaintiffs<br><br>v.<br><br>KNOX COUNTY, DANIEL DAVEY, in his individual capacity and in his official capacity as Knox County Sheriff, and JANE DOE and JOHN DOE, in their individual capacities,<br><br>            Defendants | Civil No. 02-251-P-C |

Gene Carter, Senior District Judge

**ORDER ON DEFENDANTS' MOTION FOR RECONSIDERATION**

Now before the Court is Defendants' Motion for Reconsideration of the Court's Order Granting in Part and Denying in Part Plaintiffs' Motion for Summary Judgment (hereinafter "Summary Judgment Order"). Defendants' arguments have been thoroughly considered and, with the qualification of enunciating the class members to whom the Court's finding of liability applies, the Court will deny the Motion for Reconsideration.

**I. Class Members Included in the Summary Judgment Findings**

Defendants' motion highlights an ambiguity contained within the Summary Judgment Order. Specifically, Defendants' motion assumes that the Summary Judgment Order's finding of municipal liability for the strip searches of misdemeanor detainees without reasonable suspicion applies to all class members. Defendants assert that the

Plaintiff class includes all misdemeanor detainees who were strip searched without reasonable suspicion after November 19, 1996.[1]  Consequently, they argue, such an interpretation of the Summary Judgment Order leads to the unusual result of finding municipal liability for strip searches which may occur in the future.  While Defendants read the Order broadly to reach such a conclusion, the Court will not follow suit.

Neither party raised, prior to the Motion for Reconsideration, the issue of whether record evidence of the unconstitutional custom found by the Court applied equally to all class members' claims.  Rather, the parties briefed, and the Court considered, only the narrower issue of whether, based upon the record evidence, a trialworthy issue existed with regard to any of the elements of Plaintiffs' class claim.  Now that Defendants have surfaced the issue of whether the summary judgment finding regarding the existence of an unconstitutional custom at the Knox County Jail should necessarily extend to all members of the class, the Court will address that issue in the context of summary judgment.

As noted in the Summary Judgment Order, Plaintiffs bear the burden of demonstrating that there existed a custom or practice of strip searching misdemeanor detainees without reasonable suspicion, that the custom or practice was attributable to the municipality, and that the custom or practice was the moving force behind the constitutional violation.  Thus, in order for Plaintiffs to establish liability for a particular strip search, they must establish that the custom or practice existed at the time of the constitutional violation.

---

[1] There is some dispute as to whether the Class has been closed or remains open.  For purposes of this Order, however, that issue need not be addressed.

In finding that the custom existed, the Court considered undisputed evidence of misdemeanor detainees being strip searched without reasonable suspicion from at least 1994 to at least 2003. Central to the Court's determination that such a custom existed was evidence obtained from booking logs at the jail demonstrating that corrections officers routinely strip searched misdemeanor detainees without reasonable suspicion. The record, however, only contains log evidence from January of 1997 until August of 2002. While there remains some evidence of strip searches occurring after August of 2002, that evidence alone is insufficient to persuade the Court that a reasonable factfinder would be required to conclude that there continued a custom of doing so. As for strip searches occurring after November 19, 1996 but prior to January of 1997, the record contains undisputed evidence that both in 1994 and in 2000 corrections officers at the jail were strip searching all detainees charged with misdemeanors. Based upon this and the other record evidence relied upon by the Court, and in the absence of any other evidence creating a trialworthy issue, any reasonable factfinder would conclude that the custom of doing so continued throughout that time. Accordingly, Plaintiffs have thus far established that a custom of strip searching misdemeanor detainees without reasonable suspicion existed from November 20, 1996 through August of 2002. The Summary Judgment Order's finding of liability, therefore, only applies to searches conducted within this time.[2]

---

[2] This limitation of liability renders moot Defendants' arguments regarding the Summary Judgment Order's discussion of intradepartmental memoranda entitled "strip search practice interview," as that evidence consisted of strip searches occurring after August of 2002 and is not needed to support the Court's finding of liability.

## II. Municipal Liability

### A.     Select Pieces of Evidence

First, Defendants argue that the Court misconstrued individual pieces of evidence contained in the record. They contend that, in some instances, the Court drew inferences unsupported by the record, and in others, the Court failed to draw reasonable inferences favorable to them, as required by the applicable summary judgment standard. Although the Court deems these arguments to be without merit, because many of them are now raised for the first time, the Court will briefly address each of them.

### 1. Department of Corrections Jail Inspection Reports from 1994 and 2000

With respect to both the 1994 and 2000 jail inspection reports, Defendants assert that "the strongest inference supported by [these] reports is that some unidentified correctional officers (those providing the information in the reports) conducted strip searches in 1994 and 2000." Motion for Reconsideration at 6 (Docket Item No. 150). Defendants, however, mischaracterize the evidence. Both reports conclude that "all inmates are being strip searched regardless of the crime if they are to be housed." These reports are uncontroverted by the record. Instead, Defendants attack the credibility of the evidence, arguing that the reports lack detail. "However, a mere challenge to the credibility of a movant's [evidence] without any supporting evidence does not create a genuine issue of material fact." *Moreau v. Local Union No. 247*, 851 F.2d 516, 519 (1st Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986)). Without any affirmative evidence creating a genuine issue of material fact, the Court properly relied upon this evidence as proof that in 1994 and 2000 "all inmates [were] being strip searched regardless of the crime if they [were] to be housed."

4

Defendants further challenge the relevance of this evidence, arguing that the 1994 jail inspection report is not relevant for any purpose because it covers a period of time outside the scope of Plaintiffs' lawsuit. The Court disagrees. The report provides information about the circumstances surrounding the search practices at the Knox County Jail as well as the knowledge of the county policymakers before the commencement of the class period. Accordingly, the Court's use of the evidence was proper.

### 2. Robbins Affidavit

Similarly, Defendants suggest that the Court's reliance on the affidavit submitted by Jail Administrator Robbins was misplaced. In granting summary judgment in favor of Plaintiffs the Court relied, in part, on Robbins' statement that through a lawsuit filed in April of 1998 he "became aware that the jail staff were not always following the policy and were, at least on some occasions, conducting strip searches in violation of policy [C-120]." Summary Judgment Order at 26-27. Defendants now argue that the statement is irrelevant for purposes of the Court's inquiry because it fails to state how many correctional officers were violating the policy or for how long. While Defendants are correct in observing that this single piece of evidence does not completely illuminate the extent of the unconstitutional practice occurring at that time, it does provide some evidence of what was occurring at the jail during the class period. Moreover, the affidavit demonstrates that, even prior to the 2000 jail inspection report, the Jail Administrator had actual knowledge that some officers were still engaging in the unconstitutional practice of strip searching misdemeanor detainees. The Court did not err in considering this evidence.

Defendants also contend that the Court should have inferred from this evidence that "jail personnel were following policy far more often than not." Although on summary judgment the nonmovant is entitled to the benefit of favorable inferences, they must be reasonable ones. The inference now sought by Defendants is in no way supported by the evidence. Robbins' Affidavit does not address the practice of other corrections officers, and, thus, such an inference would be unreasonable.

### 3. Robbins's Letter to Local Police Chiefs

The record evidence in this case provides that "[i]n 2001, Jail Administrator Robbins wrote to local police chiefs notifying them that the Knox County Jail would no longer provide the service of strip searching misdemeanor arrestees on 'the request of arresting officers (for the purpose of discovering evidence).'" Order at 27. Defendants argue that this piece of evidence is not probative of whether there was an unconstitutional practice of strip searching misdemeanor detainees without reasonable suspicion because it "allows the inference that the arresting officer had a reasonable basis, recognized by the Fourth Amendment, to believe that such a search was permissible." Motion for Reconsideration at 8. Even crediting this inference, however, Defendants' argument falls short. The Constitution requires that a corrections officer have reasonable suspicion prior to conducting a strip search of a misdemeanor detainee. The request of a police officer to strip search such a person, even for the stated purpose of discovering evidence, does not fulfill that constitutional requirement. Moreover, even assuming that this letter does not provide some evidence of an ongoing unconstitutional practice, it is still highly probative of what municipal policymakers knew about the ongoing strip search practices at the jail. There remains substantial uncontroverted record evidence that there was a practice of

strip searching misdemeanor detainees without reasonable suspicion. If this was not evidence of the fire itself, it undoubtedly showed the smoke rising over the trees.

### 4. Intake and Release Logs

Defendants take issue with the Court's conclusion that "evidence of this unconstitutional practice can be easily verified from a review of the daily intake/release log entries." Opinion at 28. First, Defendants argue that the number of misdemeanor arrestees in each category during the sample period is unhelpful because the record does not establish the percentage of arrestees that were unlawfully searched during the sample. Defendants fail to cite any authority for the proposition that, in order to establish a custom or practice, Plaintiffs must provide "at least rough percentages" of the frequency of the constitutional violation. Regardless of whether this practice was the predominant practice among corrections officers, the log evidence provides additional proof that, for at least some corrections officers, it was customary.

In order to create a genuine issue of material fact on this issue, Defendants now attempt to offer some of the percent-type evidence they assert was missing from the summary judgment record. These percentages, however, are not supported by the record. Specifically, the record does not support the assumptions regarding the average daily arrest rate for each category, the record evidence of the number of strip searches in a given category during the sample months, or Defendants' mathematical computation of the total percentage derived from the assumed average daily arrest rate. Moreover, even if Defendants' assertions were supported by the record, they have failed to timely raise this argument. Defendants did not include such evidence in their initial statement of

7

material facts.[3] *See* Local Rule 56(f) ("The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.").

Finally, Defendants contend that the Court erred in concluding that the strip searches evidenced by the logs were conducted without reasonable suspicion. Defendants now argue that, although the logs do not indicate that there was reasonable suspicion, they do not require the inference that the officers were without reasonable suspicion. Defendants now attempt to challenge Plaintiffs' statement of facts on a basis that they previously failed to do. In Plaintiffs' statement of material fact they repeatedly assert that these logs demonstrate that the searches were conducted without reasonable suspicion. *See* PSMF ¶¶ 63, 66, 67. Although in response to these statements Defendants asserted numerous challenges to Plaintiffs' exhibit, Defendant never denied that the searches evidenced by the exhibit were conducted without reasonable suspicion.[4] Instead, Defendants challenged whether the exhibit accurately reflected the logs, and challenged specific entries as having been misinterpreted. Pursuant to Local Rule 56, Defendants' failure to properly respond to these assertions in their response renders them admitted.[5]

---

[3] Instead, Defendants asserted only that the record demonstrated that "the Intake/Release Logs reveal that more inmates were not strip searched than were strip searched." DSMF ¶170. As noted above, the fact that the unconstitutional practice was not a predominate one, is not sufficient to create a trial worthy issue in this case.

[4] In response to two of these facts, Defendants do ultimately "deny" the statement and, as required by the Local Rule, Defendants cite to numerous exhibits as support for their denial. None of these exhibits, however, cast any light on whether there was reasonable suspicion for these searches. Accordingly, to the extent that Defendants may have attempted to deny that fact, it was ineffective.

[5] This failure is all the more striking when one considers that, although a portion of Defendants' Opposition to Summary Judgment was devoted to contesting the validity of Plaintiffs' sample evidence, even there, Defendants never raised the issue of whether the logs permit the inference that the searches were conducted with reasonable suspicion.

### B. The Evidence as a Whole

Throughout their Motion for Reconsideration, Defendants challenge the Court's finding of municipal liability by isolating select pieces of the record evidence; each rooted in a distinct point in time and representing a selective perspective on the Knox County Jail strip search practice. They argue that each slice of evidence alone is insufficient to establish the existence of an unconstitutional practice which is attributable to the County. While Defendants are correct that there is no one piece of evidence which, alone, suffices to carry Plaintiffs' burden, they overlook the fact that the summary judgment evidence must be viewed as a whole. *See Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 276 (3d Cir. 2001) (holding that "while the individual pieces of evidence alone may not suffice to make out the claims asserted, we must view the record as a whole picture"). As catalogued in the Summary Judgment Order, the record consists of a tremendous amount of uncontroverted evidence that there was an unconstitutional practice and that county policymakers knew or should have known about it. While the Court recognizes the generous standard applicable to nonmovants on summary judgment, Defendants have simply failed to generate a record upon which that favorable standard may afford them the benefit they seek. Based upon this record, the Court is firmly convinced that no reasonable finder of fact could reach a contrary conclusion.

### C. Failure to Take Corrective Action

Defendants complain that, with respect to their actions taken to correct the unconstitutional practice, the Court focused too narrowly on the responses that occurred from 2000 to 2001 and ultimately judged the County's actions by the wrong legal

standard.  The Court disagrees with both claims.  First, the Court considered and credited all the record evidence that could arguably suggest Defendants had taken some corrective action.  However, the only record evidence of alleged corrective action taken by Defendants occurred between 2000 and 2001.  Furthermore, while Defendants read First Circuit precedent literally to require only that they do "something" after receiving notice of the unconstitutional practice, the Court notes that the "something" must be directed at stopping the unconstitutional practice.  The Summary Judgment Order provided extensive analysis to support the Court's conclusion that "no reasonable person could conclude that the actions of Knox County were directed at stopping the practice."  For all the reasons stated in the Summary Judgment Order, the actions taken by the County in response to this unconstitutional practice amounted to acquiescence in it.

### III. Sheriff Davey's Liability

As with the claim of municipal liability, Plaintiffs must establish that a custom or practice of strip searching misdemeanor detainees existed at the time of the constitutional violation in order to establish liability on the part of Sheriff Davey.  Because the Court has concluded that the Summary Judgment Order's finding of a custom or practice does not extend beyond August of 2002, the Court's finding of liability against Sheriff Davey must be similarly limited.  All of Defendants' remaining arguments made in their Motion for Reconsideration regarding Sheriff Davey's individual liability have been previously addressed by the Court in either the Summary Judgment Order or, *supra*, in this Order.  It is, therefore, unnecessary for the Court to address those arguments yet again.

### IV.  Interpretation of *Bell v. Wolfish*

Defendants contend that the Court erroneously assumed that the Supreme Court has held that pretrial detainees have a Fourth Amendment right not to be strip searched. Even a casual reading of the Summary Judgment Order makes it clear that no such assumption was a component of the Court's analysis.  The First Circuit has applied the *Bell* Fourth Amendment reasonableness test to determine the constitutionality of strip searches and, therefore, the Court proceeded to apply that reasonableness test to the strip searches in this case.

### IV. Conclusion

With the clarification that the Court's finding of liability for strip searches of misdemeanor detainees does not apply to any class member searched after August of 2002, and for the reasons stated above, the Court **ORDERS** that Defendants Motion for Reconsideration be, and it is hereby, **DENIED**.

/s/Gene Carter_____
**GENE CARTER**
Senior United States District Judge

Dated at Portland, Maine this 4th day of April, 2006.